UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IPSOS-INSIGHT, LLC,<br><br>    Plaintiff,<br><br> - against -<br><br>JACOB GESSEL,<br><br>    Defendant. | **Civil Action No. 1:21-cv-03992** |

**DEFENDANT JACOB GESSEL'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**GORDON REES SCULLY MANSUKHANI, LLP**
Michael S. Hanan, Esq.
1 Battery Park Plaza, 28th Floor
New York, NY 10004
Phone No.: (973) 549-2500
Fax No.: (973) 377-1911
mhanan@grsm.com
*Attorneys for Defendant Jacob Gessel*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY .......................................................................................................... 2

STATEMENT OF FACTS ............................................................................................................ 2

        A.        Mr. Gessel's Employment with Ipsos, Ipsos' Post-Employment Non-Compete Agreement, and Mr. Gessel's Subsequent Promotion to Assistant General Counsel. .............................................................................................. 2

                1.        Mr. Gessel Was Promoted to Associate General Counsel at Ipsos in March 2019. ............................................................................................ 3

        B.        Mr. Gessel's Resignation from Ipsos, Employment with Medallia as Corporate Counsel, and Ipsos' Pressure and Harassment Campaign against Mr. Gessel and Medallia. ................................................................................................. 4

LEGAL STANDARD .................................................................................................................... 5

LEGAL ARGUMENT ................................................................................................................... 7

        POINT I ............................................................................................................................. 7

THE COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW BECAUSE POST-EMPLOYMENT RESTRICTIVE COVENANTS AGAINST LAWYERS ARE UNENFORCEABLE AND EXPRESSLY PROHIBITED UNDER RULES OF PROFESSIONAL CONDUCT RULE 5.6 AND COURTS CANNOT ENFORCE ILLEGAL CONTRACTS. ............................................................. 7

        A.        Rules of Professional Conduct Rule 5.6 Prohibits Post-Employment Restrictive Covenants on Lawyers. ............................................................. 7

        B.        The Prohibition on Post-Employment Restrictive Covenants in RPC 5.6(a) Applies to In-House Counsel in New York. .................................... 8

        C.        RPC 5.6 Prohibits Agreements that Create Financial Disincentives for Departing Lawyers. ........................................................................... 10

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdullahi v. Pfizer, Inc.*,
  562 F.3d 163 (2d Cir. 2009) .................................................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 5, 6

*Cohen v. Lord, Day & Lord*,
  75 N.Y.2d. 95 (1989) .............................................................................................................. 8

*Denburg v. Parker Chapin Flattau & Klimpl,*
  82 N.Y.2d 375 (1993) ........................................................................................................... 11

*Menaker v. Hofstra Univ.*,
  935 F.3d 20 (2d Cir. 2019) ...................................................................................................... 6

*Schlessinger v. Valspar Corp.,*
  686 F.3d 815 (2d Cir. 2012),
  *certified question accepted,* 975 N.E.2d 489 (N.Y. 2012),
  and *certified question answered,* 991 N.E.2d 190 (N.Y. 2013) .............................................. 7

*Stone v. Freeman,*
  298 N.Y. 268, 82 N.E.2d 571 (1948) ...................................................................................... 7

*U.S. Bank Nat. Ass'n v. Ables & Hall Builders*,
  582 F. Supp. 2d 605 (S.D.N.Y. 2008) ..................................................................................... 6

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
  517 F.3d 104 (2d Cir. 2008) .................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1, 5, 11

Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 5

New York RPC 1.6(a) .................................................................................................................... 9

New York RPC 1.9(c) .................................................................................................................... 9

New York RPC 5.6 .................................................................................................. 6, 7, 8, 9, 10

New York RPC 5.6(a) ................................................................................................. 1, 7, 8, 10, 11

New York RPC 5.6(a)(1) ................................................................................................. 1, 8, 10

**Other Authorities**

N.Y. State 129 (1970) ............................................................................................................ 8

New Jersey Eth. Op. 708 (N.J.Adv.Comm.Prof.Eth.) (2006) ......................................................... 10

*NYSBA Comm. On Prof'l Ethics*, Op. 1151 (2018) ................................................................. 8, 10

*NYSBA Comm. On Prof'l Ethics*, Op. 858 (2011) .................................................................... 8, 9

oy Simon, *Simon's New York Rules of Professional Conduct Annotated*, 1497 (2016 ed.) ........... 8

**PRELIMINARY STATEMENT**

Courts cannot enforce illegal contracts, which is the only relief sought in this case. New York's Rules of Professional Conduct, Rule ("RPC") 5.6(a), expressly prohibits post-employment restrictive covenants against lawyers – which is exactly what Plaintiff Ipsos-Insight, LLC ("Ipsos"), attempts to enforce against its former Associate Corporate Counsel, Defendant Jacob Gessel ("Mr. Gessel" or "Defendant"), in this lawsuit. Not only is Ipsos utilizing this Court as a vehicle to attempt to enforce its illegal contract against Gessel, but also, Ipsos continues to attempt to directly interfere with Mr. Gessel's current employment as Corporate Counsel at Medallia, Inc. ("Medallia"), through multiple communications to Medallia, culminating in a newly filed New York state court action against Medallia for tortious interference, arising from this lawsuit, late last Friday, May 21, 2021.[1]

New York RPC 5.6(a)(1) is abundantly clear that a "lawyer shall not participate in offering or making … [an] employment … agreement that restricts the right of a lawyer to practice after termination of the relationship[.]" Yet, that is exactly what Ipsos is attempting to do in this case. It is using our courts as a means by which to enforce and restrict an attorney's right to practice law; and his clients' right to their counsel of choice, misusing the judicial system to enforce an illegal contract. Simply because Ipsos has sought to pay Mr. Gessel for the duration of his non-compete is irrelevant, and does not obviate RPC 5.6(a)(1)'s proscriptions.

Consequently, the pending Complaint should be dismissed for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] The basis for the claim against Medallia in the state court action arises from a nearly identical set of facts, and thus for reasons similar to those set forth herein, the claim against Medallia also fails.

## PROCEDURAL HISTORY

On May 4, 2021, Plaintiff filed a Complaint against Mr. Gessel in the United States District Court for the Southern District of New York, alleging breach of a post-employment restrictive covenant. (ECF No. 1)

## STATEMENT OF FACTS[2]

**A.     Mr. Gessel's Employment with Ipsos, Ipsos' Post-Employment Non-Compete Agreement, and Mr. Gessel's Subsequent Promotion to Assistant General Counsel.**

Mr. Gessel began his employment with Ipsos in February 2013, in a non-legal capacity. (ECF No. 1, Compl, ¶ 9)

On February 27, 2019, Ipsos required that Mr. Gessel execute an agreement, which contained a post-employment restrictive covenant and various confidentiality provisions, as part of his continued employment with Ipsos ("Fair Competition Agreement"). (Certification of Counsel "Counsel Cert.," Exhibit A) The Fair Competition Agreement contains a post-employment restrictive covenant, which prohibits Mr. Gessel from working for a competitor of Ipsos after the termination of his employment, with a geographic scope of the United States and Canada for a 12-month period. (ECF No. 1, Compl, ¶ 13) Specifically, the non-compete provides in part:

> Accordingly, you agree, subject to the provisions below, including those relating to payments that may be due to you, that during your employment with the Company, and for a period of twelve (12) months after the date of termination of your employment for any reason (the "Non-Compete Period"), you will not directly or indirectly work for or with, own, invest in, render any services or

---

[2] The factual allegations contained in Plaintiff's Complaint are presumed to be true only for the purpose of this Motion. Although Defendant disagrees with Plaintiff's characterizations of the facts as pled in the Complaint, for the purposes of this Motion, Defendant acknowledges that the Court must accept the factual allegations as true and has accordingly summarized the pertinent allegations herein. Defendant reserves the right to challenge the veracity of Plaintiff's allegations and specifically deny any liability.

2

> provide advice to, or act as officer, director, employee, or independent contractor for, any person or entity that competes with the Company in the products or services it offers to its Clients at the time of the termination of your employment. You acknowledge that given the nature of the business of the Company and the geographical market of the Company (which you acknowledge is international in scope) combined with your role and responsibilities, the geographical area of the United States and Canada and the period of twelve (12) months are both reasonable.

(*Id.*)

Section 5(d) of the Fair Competition Agreement provides that for employees terminated without cause or for those who resign, the non-compete would only be effective if Ipsos elected to pay the departing employee his annual base salary at the time of his departure. (*Id.* at ¶ 14) The Fair Competition Agreement does not include a savings clause, nor does it make any reference to RPC 5.6.

### 1. Mr. Gessel Was Promoted to Associate General Counsel at Ipsos in March 2019.

A few months after he started working at Ipsos in 2013, Mr. Gessel graduated law school, and passed the bar exam. (*Id.* at ¶10)[3] On April 11, 2019, Ipsos offered him a promotion to Assistant General Counsel to Ipsos North America ("Letter Agreement"), which was to be retroactively effective March 1, 2019. (*Id.* at ¶ 11) (*See also* Counsel Cert., Exhibit B, Letter Agreement)  Pursuant to the terms of the Letter Agreement, the promotion was contingent upon Mr. Gessel signing the Fair Competition Agreement. (*Id.* at ¶ 12)

---

[3] Mr. Gessel graduated law school in May 2013.

3

**B.     Mr. Gessel's Resignation from Ipsos, Employment with Medallia as Corporate Counsel, and Ipsos' Pressure and Harassment Campaign against Mr. Gessel and Medallia.**

On March 4, 2021, Mr. Gessel notified Ipsos of his resignation from Ipsos, with his last day as April 16, 2021, in accordance with the notice provisions of the Letter Agreement. (ECF No. 1, Compl, ¶¶ 19, 25)

Starting on or about April 15, 2021, after Ipsos discovered that Mr. Gessel would be working for Medallia, Ipsos began a campaign of pressure and intimidation against Mr. Gessel. First, Ipsos informed Mr. Gessel that it would be enforcing the non-compete (despite that RPC 5.6 prohibits post-employment restrictive covenants as to lawyers), requiring Mr. Gessel to refrain from working for Medallia for 12 months and paying him his full base salary, in an attempt to enforce the non-compete. (*Id.* at ¶ 26)[4] Ipsos then forwarded the letter to Mr. Gessel's new employer, including Medallia's CEO and General Counsel, in an attempt to dissuade Medallia from employing him. (*Id.* at ¶ 27)

On April 27, 2021, Mr. Gessel informed Ipsos that he did not agree with the non-compete requirement and that Ipsos should not pay him to enforce the non-compete. (*Id.* at ¶ 28) Ipsos' General Counsel[5] then emailed him and asked if he intended to join Medallia despite the non-compete, and Mr. Gessel responded that was his intent. (*Id.* at ¶ 29) On April 28, 2021, Ipsos continued its campaign by sending a second letter directly to Medallia, about enforcing the non-compete against Mr. Gessel. (*Id.* at ¶ 30)  Two days later, on April 30, 2021, Ipsos sent a third

---

[4] Although the Complaint states that the letter was sent on April 16, Ipsos actually sent the letter via email on April 15.

[5] Ipsos' General Counsel was also Mr. Gessel's supervisor at Ipsos prior to his resignation. (*See* Counsel Cert., Exhibit B)

4

letter to Medallia about its intention to take legal action against Medallia with respect to Mr. Gessel. (*Id.* at 32)

On May 1, 2021, Medallia confirmed with Ipsos that it would "never allow any employee to use any confidential or trade secret information of their prior employer." (*Id.* at ¶ 33) Medallia's General Counsel also advised that he would be able to speak with Ipsos on May 5 or 6, 2021. (*Id.*) However, without meeting and conferring with Medallia's General Counsel, as offered, on May 4, 2021, Plaintiff filed the pending lawsuit against Mr. Gessel, alleging breach of contract with respect to the Fair Competition Agreement and seeking the court's intervention to restrain Mr. Gessel from working at Medallia for a one year period. (ECF No. 1)

In furtherance of its pressure and harassment campaign, and as a further misuse of the judicial system, on May 21, 2021, Ipsos filed a Complaint against Medallia in the Supreme Court of New York, County of New York, entitled *Ipsos-Insight, LLC v. Medallia, Inc.*, alleging tortious interference with Ipsos' contractual relationship with Mr. Gessel. (Counsel Cert., Exhibit C)

## **LEGAL STANDARD**

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted)).

As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief. 556 U.S. at 665. This plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* A complaint must do more than allege a plaintiff's entitlement to relief – it must show such an entitlement with its facts. *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 169 (2d Cir. 2009); *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008); *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 606 (S.D.N.Y. 2008).

In the matter at bar, dismissal of the Complaint is warranted based on the express prohibition against restricting an attorney's freedom to practice law and a client's freedom to choose his/her counsel of choice, under RPC 5.6.

## LEGAL ARGUMENT

### POINT I

**THE COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW BECAUSE POST-EMPLOYMENT RESTRICTIVE COVENANTS AGAINST LAWYERS ARE UNENFORCEABLE AND EXPRESSLY PROHIBITED UNDER RULES OF PROFESSIONAL CONDUCT RULE 5.6 AND COURTS CANNOT ENFORCE ILLEGAL CONTRACTS.**

The Complaint must be dismissed with prejudice because courts cannot enforce illegal contracts and Plaintiff's breach of contract claim -- premised on a post-employment restrictive covenant against a lawyer -- is invalid as a matter of law and the enforcement of which expressly violates our Rules of Professional Conduct. *See Schlessinger v. Valspar Corp.,* 686 F.3d 81, 85 (2d Cir. 2012), *certified question accepted,* 975 N.E.2d 489 (N.Y. 2012), and *certified question answered,* 991 N.E.2d 190 (N.Y. 2013) ("New York courts will not enforce illegal contracts") (citing *Stone v. Freeman,* 298 N.Y. 268, 82 N.E.2d 571, 572 (1948) ("It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose.")

**A.** **Rules of Professional Conduct Rule 5.6 Prohibits Post-Employment Restrictive Covenants on Lawyers.**

RPC 5.6(a) expressly prohibits the post-employment restrictive covenant contained in the Fair Employment Agreement that Ipsos is attempting to enforce in this case. Pursuant to RPC 5.6:

> (a) A lawyer shall not participate in offering or making:
>
> (1) a partnership, shareholder, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement[.]

7

The main purposes of RPC 5.6(a)(1) are to protect the ability of lawyers to practice law and to protect the ability of clients to choose their counsel freely. *See* Comment 1 to RPC 5.6 ("An agreement restricting the right of lawyers to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer.") *See also* N.Y. State 129 (1970) ("A covenant restricting a lawyer after leaving the partnership from fully practicing his profession appears ... to be an unwarranted restriction on the right of the lawyer to choose his clients in the event they seek his services and an unwarranted restriction on the right of the client to choose the lawyer he wishes to represent him"); *Cohen v. Lord, Day & Lord*, 75 N.Y.2d. 95, 98 (1989) ("The purpose of the rule is to ensure that the public has the choice of counsel").

**B.    The Prohibition on Post-Employment Restrictive Covenants in RPC 5.6(a) Applies to In-House Counsel in New York.**

RPC 5.6(a)'s prohibition on post-employment restrictive covenants on lawyers applies to in-house and corporate counsel in New York. *See NYSBA Comm. On Prof'l Ethics*, Op. 1151 (2018) (an in-house lawyer for a corporation could not sign an agreement with her employer that restricted her ability to solicit or provide services to the company's customers for a period of time post-employment.); *NYSBA Comm. On Prof'l Ethics*, Op. 858 (2011) (confidentiality clauses in agreements with members of an in-house legal department may not extend so beyond a lawyer's duty to maintain confidential information as to restrict a lawyer's post-employment right to practice law under RPC 5.6); Roy Simon, *Simon's New York Rules of Professional Conduct Annotated*, 1497 (2016 ed.) (RPC 5.6(a)(1) is intended to cover lawyers of every type and description). It should be underscored that the purpose of RPC 5.6(a) is to protect a client's right to choose his or her counsel of choice.

In *NYSBA Comm. On Prof'l Ethics*, Op. 858, the New York State Bar Association Committee on Professional Ethics analyzed whether employment of a New York lawyer for the role of in-house counsel conditioned on a confidentiality agreement – not even a restrictive covenant – would run afoul of RPC 5.6. In its analysis, the Ethics Committee explained: "If the proposed confidentiality agreement protects more information than Rules 1.6(a) and 1.9(c), **a New York lawyer who enforces the agreement after an in-house legal employee terminates employment may be violating Rule 5.6(a)(1) by restricting the former in-house lawyer's practice of law**." (emphasis added). The Ethics Committee ultimately concluded that:

> A general counsel who is a New York attorney may require in-house staff attorneys to sign a confidentiality agreement that might otherwise extend staff attorney confidentiality obligations, after the employment period, to information not otherwise protected as confidential information under the Rules, if the agreement makes plain that such confidentiality obligations **do not restrict the former in-house attorney's right to practice law following employment and do not expand the scope of the attorney's duty of confidentiality under the Rules.**

*Id.* (emphasis added). In addition, the Op. 858 cites to New Jersey's Ethics Opinion directly addressing the issue of whether New Jersey's RPC 5.6 applied to in-house counsel, finding that New Jersey already addressed this issue. *Id.*

According to the New Jersey Supreme Court Advisory Committee on Professional Ethics:

> The fact that the restrictive covenant agreement in question arises in the corporate context, rather than within a law firm, is of no moment. The Court Rules make clear that in-house counsel in New Jersey, whether licensed by this State or not, are bound to follow our *Rules of* Professional *Conduct*, including RPC 5.6. And the result we reach is consistent with every other state and local committee that has looked at the applicability of this rule to in- house lawyers. Va. St. Bar Conn. Op. LEO#1650, *supra*; Ill. St. Bar Ass'n, Advisory Op. on Prof. Conduct, Op. No. 92-14, *supra*; Conn. Bar Ass'n Comm. on Prof. Ethics, Information Op. No. 02-05, *supra*; Wash. St. Bar Ass'n, Informal Op. No. 2100, *supra*; Phila. Bar Ass'n, Prof. Guidance Com., Guidance Op. No. 96-5, *supra*; Wash. D.C. Bar

Ass'n, Op. 291, *supra*.

New Jersey Eth. Op. 708 (N.J.Adv.Comm.Prof.Eth.) (2006)

A lawyer's obligations under RPC 5.6(a)(1) are applicable even when the employer engages a lawyer for a purpose other than the practice of law. *NYSBA Comm. On Prof'l Ethics*, Op. 1151 ("Rule 5.6(a)(1) applies no matter whether the employment agreement engages the lawyer to practice law.") The Ethics Committee emphasized that:

> the unambiguous language of Rule 5.6(a)(1), and the purposes it promotes, supply no basis to distinguish between a contract with a non-client employer (or any other party) restricting a lawyer's right to practice law after the relationship is ended. In each circumstance, the lawyer would be making or participating in the making of an agreement that, by restraining the lawyer's ability to practice law, constricts the freedom of the client to choose a lawyer and the lawyer to accept an engagement.

*Id.*

Accordingly, RPC 5.6's prohibition against post-employment restrictive covenants clearly applies to in-house counsel under New York law. Plaintiff is either unaware of, or intentionally ignoring the direct applicability of RPC 5.6(a) here.

In the matter at bar, there is no dispute that Mr. Gessel is a lawyer and was employed by Ipsos in his legal capacity as Assistant General Counsel, from April 11, 2019 through his resignation on April 16, 2021; and he continues to be employed as a lawyer with Medallia, as its Corporate Counsel following his departure from Ipsos. Thus, Ipsos' post-employment restrictive covenant violated RPC 5.6, prohibiting non-competes against lawyers.

### C. RPC 5.6 Prohibits Agreements that Create Financial Disincentives for Departing Lawyers.

Not only does RPC 5.6(a)(1) prohibit non-compete clauses for lawyers, but also, it prohibits agreements for the paid non-compete that Ipsos is attempting to enforce through this

Court. Indeed, financial disincentives for a departing lawyer was an impermissible restriction on the practice of law and unenforceable as against public policy.

> [R]estrictions on the practice of law, which include 'financial disincentives' against competition as well as outright prohibitions, are objectionable primarily because they interfere with the client's choice of counsel: a clause that penalizes a competing attorney by requiring forfeiture of income could 'functionally and realistically discourage' a withdrawing partner from serving clients who might wish to be represented by that lawyer.

*Denburg v. Parker Chapin Flattau & Klimpl,* 82 N.Y.2d 375, 380-81 (1993)

Here, it is of no moment that the post-employment restrictive covenant that Ipsos is attempting to enforce against Mr. Gessel is a ***paid*** non-compete, because it serves the same purpose of enticing and discouraging Mr. Gessel from serving clients who obviously want to be represented by him here - Medallia.

Thus, even accepting the Complaint's well-pleaded facts as true; excising Plaintiff's legal conclusions from the Complaint and reviewing the integral documents that Plaintiff references, Plaintiff's Complaint should be dismissed as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6), because post-employment restrictive covenants as applied to lawyers, whether paid or unpaid, are expressly prohibited under RPC 5.6(a).

## **CONCLUSION**

Based on the foregoing, Defendant Jacob Gessel respectfully requests that the Court grant his Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted, and grant such other and further relief to Mr. Gessel that the Court deems appropriate.

        Respectfully submitted,

        By: */s/ Michael S. Hanan*
            Michael S. Hanan, Esq.

        **GORDON REES SCULLY MANSUKHANI, LLP**
        1 Battery Park Plaza, 28th Floor
        New York, NY 10004
        Phone No.: (973) 549-2500
        Fax No.: (973) 377-1911
        mhanan@grsm.com

        *Attorneys for Defendant Jacob Gessel*

Dated:  May 26, 2021