# Proskauer>>

Proskauer Rose LLP    Eleven Times Square    New York, NY 10036-8299

Steven M. Kayman
Member of the Firm
d +1.212.969.3430
f 212.969.2900
skayman@proskauer.com
www.proskauer.com

May 26, 2021

VIA ECF

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square, Room 1105
New York, New York 10007

Re:   Ipsos-Insight, LLC v. Gessel, Case 1:21-cv-03992-JMF

Dear Judge Furman,

We represent Ipsos-Insight, LLC ("Ipsos"), the plaintiff in this case. We respectfully request that the Court hold a conference, at your Honor's earliest convenience, to entertain our client's application for limited and focused expedited discovery in aid of Ipsos' planned motion for a preliminary injunction to enforce a ***paid*** 12 month non-compete being violated by Defendant Jacob Gessel.

Before sending this letter, we sent an email asking counsel for Mr. Gessel, the Gordon & Rees firm, which is also serving as counsel for Mr. Gessel's new employer, Medallia, Inc. ("Medallia"), whether their clients would consent to the expedited discovery described below. Opposing counsel did not respond to our request that they let us know by the close of business yesterday. I therefore called and spoke with Michael Hanan of Gordon & Rees. He said he had not yet had an opportunity to speak with his client so I said we would wait until noon today before reaching out to the Court. It is now past that time. Thus, we are sending this letter.

We respectfully direct the Court to the 13 page complaint filed by Ipsos for a more complete statement of the underlying facts. However, stated briefly, Mr. Gessel worked for Ipsos for more than eight years, for a good part of that time as a contract coordinator in the Public Affairs Department, responsible for its government contracts. Then, after passing the bar, he was invited to join the legal department but remained integrally involved with the acquisition and administration of very large government contracts. He also effectively continued to serve as the manager of the Public Affairs Office in Washington, DC, an office with more than 60 personnel and in 2018, he became the data protection officer for Ipsos in North America (a compliance function role that typically sits within operations or finance within the Ipsos global organization, having been selected for this role as the person with the best body of knowledge in respect of privacy matters and how they can be implemented into processes and procedures due



to his extensive knowledge with government contracts). Thus, even after joining the Ipsos legal department, Mr. Gessel functioned in both a legal and business/operational capacity.

After providing notice that he was resigning in early March 2021, Mr. Gessel lied and dissembled about where he was going and therefore was allowed to continue working for Ipsos during his 45 day notice period. Then, three days before leaving, he admitted he was joining Medallia. Ipsos immediately exercised its non-compete. Following his last day with Ipsos, Mr. Gessel notified Ipsos that he did not intend to honor his non-compete obligations.

Thereafter, Ipsos engaged in discussions with inside and outside counsel for Medallia/Gessel and between both business heads and the CEOs of the two companies. We felt we could proceed in a measured fashion, rather than seeking immediate injunctive relief, because Mr. Gessel is not in possession of a formula or algorithm or some other form of trade secret that would cause immediate harm if disclosed or used. Rather, Mr. Gessel's knowledge of Ipsos' confidential information is the kind that would be put to use over time during service to a competitor, though the irreparable harm it will cause will be equally profound. We also attempted to engage Medallia (and Mr. Gessel) in discussion because our client was very surprised that either of them would disrespect Ipsos' contractual rights. Medallia, while a direct and very substantial competitor, also partners with Ipsos from time to time, including on large government contracts. In popular nomenclature, Ipsos and Medallia are "frenemies." We had hoped there was a misunderstanding and that, once Medallia and Mr. Gessel understood how seriously Ipsos viewed this situation, they would honor Ipsos' contractual rights.

Regrettably, that has not happened. Quite the opposite. While Medallia has offered to wall Mr. Gessel off from some kinds of work for some unspecified period of time, it has flatly refused to respect Ipsos' contract. It has also been less than transparent and, to this day, despite repeated requests, we do not know when Mr. Gessel started at Medallia or what he has been doing. He also wiped his Ipsos-issued phone before returning it. The way in which Mr. Gessel and Medallia have handled the situation, both before and after the violation of the non-compete became known, has greatly increased Ipsos' level of concern. *See*, *e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), in which the court enjoined the defendant from accepting competing employment, even in the absence of a contractual non-compete, based in part on the conclusion that the defendant could not be trusted because of his lack of forthrightness with his former employer.

We seek the following tailored discovery:

- Documents relating to Mr. Gessel's hiring by Medallia;

- Documents showing what he has been doing since joining Medallia and what it was and is intended he will be doing in the next twelve months;

- A 3-4 hour deposition of Mr. Gessel; and


The Hon. Jesse M. Furman
Page 3

- Short (approximately 1 hour) depositions of whomever at Medallia was most involved in hiring Mr. Gessel and of whomever has been or will be supervising him.

We also offered and offer to make available for deposition by counsel for Mr. Gessel a representative from Ipsos, who can provide information about what Mr. Gessel did at Ipsos and how he will cause harm to Ipsos if he is permitted to violate his non-compete by working at Medallia. In addition, we are prepared to produce whatever documents opposing counsel might reasonably request.

We look forward to appearing before the Court as soon as the Court's schedule permits, either in-person or remotely. We are also prepared to make a formal motion if the Court would prefer.

Respectfully yours,

Steven M. Kayman

cc: Counsel for Defendant (By email)

Application GRANTED. The parties are hereby ORDERED to appear for a conference before the Court on **June 1, 2021**, at **2:00 p.m.** The conference will be conducted remotely by telephone in accordance with Rule 2(A) of the Court's Emergency Individual Rules and Practices in Light of COVID-19, available at https://nysd.uscourts.gov/hon-jesse-m-furman. The parties should join the conference by calling the Court's dedicated conference line at (888) 363-4749 and using access code 542-1540, followed by the pound (#) key. (Members of the public and press may also attend using the same dial-in information; they will not be allowed to speak during the conference.)

As stated in Rule 2(C)(ii) of the Court's Emergency Individual Rules and Practices in Light of COVID-19, no later than **24 hours before the conference**, the parties shall send a joint email to the Court with a list of counsel who may speak during the teleconference and the telephone numbers from which counsel expect to join the call. More broadly, counsel should review and comply with the rules and guidance regarding teleconferences set forth in the Court's Emergency Individual Rules and Practices in Light of COVID-19.

The Clerk of Court is directed to terminate ECF No. 9.

SO ORDERED.

May 27, 2021